**DOVER SAND & GRAVEL, INC.**

**v.**

**R. W. JONES, Regional Director, Utilization and Disposal Service, General Services Administration, United States of America, and General Services Administration, United States of America, and The United States of America.**

**Civ. A. No. 2402.**

United States District Court
D. New Hampshire.

Sept. 4, 1963.

Shute & Engel, David C. Engel, Exeter, N. H., for plaintiff.

John D. McCarthy, Asst. U. S. Atty., Paul L. Normandin, Asst. U. S. Atty., Concord, N. H., for defendant.

CONNOR, District Judge.

This action arises out of a taking of a certain parcel of land by eminent domain pursuant to the building of the Pease

Air Force Base. The validity of the taking and just compensation was determined in a prior proceeding before this court, United States v. 10.47 Acres of Land, et al., 218 F.Supp. 730. (D.N.H. 1962).

The use for which the parcel was acquired was rendered unnecessary by reason of the construction of another project. The defendant, the General Services Administration, hereinafter referred to as GSA, a United States agency, then declared the property as surplus. Mr. Robert Jones, Director of the First District Regional Office of the GSA (which includes New Hampshire), followed certain procedures in attempting to sell said property. He contacted the City of Dover, New Hampshire, to determine if it would be interested in negotiating for the purchase of this property. It was believed that the City was interested because of the wells which were sunk on the land by the United States after the taking. However, the City was apparently not interested and declined this offer. GSA then invited open public bidding, for which there were three bids: the plaintiff bid $20,110; the City of Dover bid $20,100; and the third bid was much lower and one with which we are not concerned here. GSA rejected all bids as being inadequate, an action which plaintiff concedes may be done under the statute.[1] Thereafter, the City of Dover and GSA began negotiations for the sale of the property to the exclusion of all other parties. The City submitted an offer of $29,131 based on the fair market value as indicated by an appraisal done for GSA. The president of the plaintiff corporation has attempted to begin negotiations with GSA with no success because of its choice not to so negotiate.

The plaintiff then instituted this petition alleging that it is feasible for plaintiff to negotiate with defendant and thus asks that GSA be enjoined from proceeding with the disposal of the property to the City of Dover or to others and that the defendant be required to negotiate with it. The defendant has filed a motion to dismiss based on lack of jurisdiction, the merits of which is the subject of this order.

The applicable statute governing the activities of the GSA in disposal of surplus property is set out in its pertinent parts as follows:

40 U.S.C. § 484 *Disposal of Surplus Property*

"(a) * * * the Administrator shall have supervision and direction over the disposition of surplus property. * * *

\* \* \* \* \* \*

"(e) (1) All disposals or contracts for disposal of surplus property * * * made or authorized by the Administrator shall be made after publicly advertising for bids * * * except as provided in paragraphs (3) and (5) of this subsection.

\* \* \* \* \* \*

"(3) Disposals and contracts for disposal may be negotiated, under regulations prescribed by the Administrator, without regard to paragraphs (1) and (2) of this subsection but *subject to obtaining such competition as is feasible under the circumstances, if*—[Emphasis added.]

\* \* \* \* \* \*

"(H) the disposal will be to States, Territories, possessions, political subdivisions thereof, or tax-supported agencies therein, and the estimated fair market value of the property and other satisfactory terms of disposal are obtained by negotiation;"

A principal contention advanced by the defendants in this motion is that this court is without jurisdiction because this is a suit against the United States, and as such falls within the doctrine of sovereign immunity as the sovereign here has not consented to be sued. The plaintiff answers this contention urging that a re-

---

1. 40 U.S.C. § 484(e) (2) (C).

cent statute, 28 U.S.C. § 1361, Pub.L. 87–748, § 1(a), Oct. 5, 1962, 76 Stat. 744, gives this court jurisdiction. The statute provides in its entirety:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Therefore, the first question with which I am presented is the effect of this statute. A search of the authorities reveals but two cases construing it. The first is Parker v. Kennedy, 212 F.Supp. 594 (S.D.N.Y.1963), wherein the court denied a writ of mandamus to compel the United States Attorney General to institute anti-trust proceedings. It held that the "traditional doctrine of separation of powers" prevents an intrusion of the "Attorney General's executive discretionary power," of controlling and supervising prosecutions and suits to which the United States is a party. The court concluded by saying that § 1361 did "not alter the situation," citing the legislative history.

The second case is McEachern v. United States, 212 F.Supp. 706 (W.D.S.C. 1963). In that case, plaintiff was a Hearing Examiner for the Social Security Administration who had been ordered removed by the Civil Service Commission. The plaintiff appealed to the district court seeking a reversal of the order and reinstatement. The court held that the defendant's motion to dismiss be granted on the ground that the court had no jurisdiction to review the decision of the Civil Service Commission in that case. In considering § 1361 and § 1391 (e) which were passed together, the court summarized the meaning of the statute as follows at page 712:

"The Legislative History of this Act shows that the purpose of the amendments is to provide specifically that the jurisdiction conferred on the district courts by the act is limited to compelling a Government official or agency to perform a duty owed to the plaintiff or to make a decision, that is, to act where there is a duty or an obligation to act, or where the official or agency has failed to make any decision in a matter involving the exercise of discretion and only to order that a decision be made with no control over the substance of the decision. The purpose of the Act is not to direct or influence the exercise of discretion of the officer or agency in the making of the decision, or to order the Government official to act contrary to his discretion. It does not supersede other specific statutory provisions. The further purpose of the Act is to make it possible to bring actions against Government officials and agencies in United States district courts outside the District of Columbia, which, because of certain existing limitations on jurisdiction and venue, may now be brought only in the United States District Court for the District of Columbia. This Act does not create new liabilities or new causes of action against the United States Government or its officials. United States Code Congressional and Administrative News, 87th Congress—Second Session, 1962, No. 17, pages 2784, 2785, 2787."

It is clear from the legislative history and an analysis of the prior law of sovereign immunity to which I will make later reference, that Congress did not (nor does the statute) intend to create any new substantive rights. The new statute and amendment merely codified the existing judicial conclusions, save for the enlargement of venue to certain district courts under § 1391.

Therefore, if the plaintiff could not have obtained relief before the enactment of § 1361, he is in no better position now. The leading case of Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), resolved two lines of somewhat conflicting cases with the principle that there are two types of situations where a suit without consent against the sover-

eign is not barred by the sovereign immunity doctrine:

"There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign. * * * where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. * * *

"A second type of case is that in which the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional. * *

"These two types have frequently been recognized by this Court as the only ones in which a restraint may be obtained against the conduct of Government officials." (337 U.S. at 689, 690, 69 S.Ct. at 1461, 1462, 93 L.Ed. 1628.)

The courts in applying this rule have allowed mandamus to issue against a federal officer when the officer was not following the procedure set forth in the statute which governed his conduct. Clackamus County, Ore. v. McKay, 94 U.S.App.D.C. 108, 219 F.2d 479 (1955); see Stark v. Wickard, 321 U.S. 288, 64 S. Ct. 559, 88 L.Ed. 733 (1944).

This distinction between a federal officer going beyond his authority in that he does not follow the ministerial steps commanded by the statute, thus creating a situation within the judicial rule where mandamus may issue, and the case where the officer is authorized under the statute to use his judgment and discretion and where mandamus will not lie, was well recognized by Congress. In the Senate Report concerning the future 28 U.S.C. § 1361, the following statement is found:

"The Department of Justice in its report on the bill expressed concern that the bill might be interpreted to give the district courts jurisdiction to order a Government official to act in a manner contrary to his discretion. The committee, therefore, has adopted the amendment set forth to section 1 which specifies that the

court can only compel the official or agency to act where there is a duty, which the committee construes as an obligation, to act or, where the official or agency has failed to make any decision in a matter involving the exercise of discretion, but only to order that a decision be made and with no control over the substance of the decision."

The principles set forth in the Larson case, supra, have been reaffirmed in two decisions by the Supreme Court within the last year. In Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), the Court said about the Larson decision:

"Cutting through the tangle of previous decisions, the Court expressly postulated the rule that the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is 'not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.'" (369 U.S. at page 647, 82 S.Ct. at page 983)

In Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), the court summarized the law of sovereign immunity.

"The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' Land v. Dollar, 330 U.S. 731, 738 [67 S.Ct. 1009, 1012, 91 L.Ed. 1209] (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' Larson v. Domestic & Foreign Corp., supra [337 U.S.] at 704 [69 S.Ct. at 1468, 93 L.Ed. 1628]; Ex parte New York, 256 U.S. 490, 502, [41 S.Ct. 588, 65 L.Ed. 1057] (1921).

*　　*　　*　　*　　*　　*

"Those exceptions [to the general rule of immunity] are (1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." (372 U.S. at pages 620–622, 83 S.Ct. at page 1007)

 The individual here complained against is the Regional Director of the General Services Administration, an agency of the United States. He was purportedly acting within his statutory powers and, in the absence of proof to the contrary, his actions were those of the United States and the suit would thus, in effect, be against the sovereign. Larson v. Domestic and Foreign Commerce Corp., supra.

 In this case the statute gives the Administrator discretion on the procedure he and his authorized representatives are to use in negotiating when the disposal will be to a local governmental unit. When the disposal falls within 40 U.S.C. § 484(e) (3) (H), as the transaction to the City of Dover does, then Congress has provided that the Administrator is not bound to follow the specific procedure called for in subsections (1) and (2) of § 484(e). The only limitation placed upon the Administrator in a § 484 (e) (3) (H) situation is that of following his own regulations and "obtaining such competition as is feasible under the circumstances." There is no doubt that the statute contemplates the exercise of judgment and discretion on the part of the Administrator. His authority in this situation is quite different from that which calls for public bidding and the procedure to be followed there. For public bidding, the statute is specific and the Administrator's functions there might properly be called "ministerial." It is these ministerial duties which when not followed might be situations where mandamus would issue under the Larson rule and under § 1361. Here, however, the statute gives the Administrator discretion to proceed with negotiations subject to his determination of obtaining compe-

tition "as is feasible." It is this independent judgment given to the Administrator as agent for the sovereign with which I cannot interfere without a showing that the federal officer is acting outside the authority vested in him by the statute. There has been no such showing here. I hold that it is in the Administrator's discretion under the statute to determine what is feasible competition and, therefore, his representatives cannot be directed as to the method of carrying out this discretion. Because the Administrator is within his governmental authority, this is a suit against the government without its consent. Thus, the doctrine of sovereign immunity applies and the government's motion to dismiss for want of jurisdiction must be granted.

It is so ordered.