Captain Douglas Bruce McGAW et al., Appellants,

v.

Colonel A. Allen FARROW et al., Appellees.

No. 72–1771.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 3, 1972.

Decided Jan. 15, 1973.

---

Carroll T. Neale, III, and Richard W. Hudgins, Newport News, Va. (Hudgins & Neale, Newport News, Va., on brief), for appellants.

Edward C. Newton, IV, Captain, JAGC, Dept. of the Army (Brian P. Gettings, U. S. Atty., James A. Oast, Jr., Asst. U. S. Atty., on brief), for appellees.

Before WINTER, BUTZNER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The plaintiffs seek declaratory and injunctive relief in connection with the denial by the commander of the military base at Fort Eustis, Virginia, of their application to use the chapel facilities at such base for "a religious memorial service * * * for all Indo-China war dead."[1] They describe themselves as persons "who are now, or, have been and will be, members of the United States Army stationed at Fort Eustis, Virginia". It is their contention that the deni-

al to them of the use of such facilities was "arbitrary and capricious * * * without any rational basis in fact and represented an abusive use of military authority", in violation of plaintiffs' constitutional right of free speech, peaceful assembly and the exercise of religious freedom. The defendants moved to dismiss the complaint and for summary judgment both on the procedural ground that plaintiffs were without standing and, substantively, on the ground that the action of the camp commander in denying the application was neither arbitrary nor capricious. At the hearing on the motion to dismiss, both plaintiffs and defendants submitted various affidavits. In addition, the Court, although the defendants had not answered, proceeded to a trial of the cause and took the testimony of the plaintiffs and such witnesses as were offered by the defendants. It was plain from this record that the plaintiffs were vigorously opposed to the Viet-Nam war and had repeatedly expressed themselves to this effect. Some of them had earlier applied for permission to circulate on base a petition "denouncing the United States' participation in the war in Viet-Nam." The plaintiffs conceded that "peace and the war in Viet-Nam were certainly going to be underlying themes in the chapel service" which they wished to sponsor. According to the affidavits submitted by the defendants, the purpose of the proposed meeting, as expressed by the defendants and not denied specifically at the hearing, was "to arouse men to action",[2] since "The news media and everyone takes notice when the soldier demonstrates."[3] One of the leaders among the plaintiffs gave, as one of the reasons for the proposed service, that "today there is a strong feeling about the war in Vietnam. Most of it

---

1. At one time the plaintiffs concede they may have described their proposed meeting as a "peace meeting". At another point, they referred to it as a "protest" meeting.

2. The plaintiff who was quoted to this effect did not deny this statement of the purpose of the meeting, but merely said

"I think that's misquoting in a sense." What apparently he was saying was that he had made the statement but that the Army took it in the wrong "sense". Just what "sense" it was to be taken in, the plaintiff testifying did not indicate. Appendix, pp. 62 and 70.

3. Appendix, pp. 108 and 133.

—at least among the younger set—is directed against the U. S. involvement there. The Army, set up as it is, does not provide the younger soldiers who feel this way the opportunity to get together and express this belief, this opinion." [4] The officer to whom the plaintiffs submitted their application it seems understood from some remarks of the plaintiffs that the proposed "religious memorial service" would be similar to one earlier held in Washington, which had resulted in considerable disturbance. With this background, the defendants requested a commitment that the services planned be "non-political" but the plaintiffs were unwilling to give such assurance. On the basis of such record, the base commander denied the application. The plaintiffs' leaders, well educated and experienced Army officers, had taken no further steps within the military hierarchy but had filed this action against the base commander, the chief chaplain at the base, the Secretary of the Army and the Secretary of Defense. The District Court dismissed the action both on jurisdictional and substantive grounds. We affirm the dismissal on jurisdictional and procedural grounds and do not reach the substantive grounds of denial.

## I.

■■ The District Court first found that the jurisdictional amount as required under Section 1331, 28 U.S.C., was lacking and that the action was subject to dismissal for this reason. There seems little doubt that this conclusion denying jurisdiction under Section 1331

was sound. Though a few decisions have held contrariwise, a like conclusion has been reached in a majority of the decisions of Circuit Courts of Appeals.[5] Whatever differences there may have previously been in these decisions would appear, however, to have been set at rest by the recent decision in Lynch v. Household Finance Corp. (1972) 405 U. S. 538, 547, 92 S.Ct. 1113, 1119, 31 L. Ed.2d 424, reh. den. 406 U.S. 911, 92 S. Ct. 1611, 31 L.Ed.2d 822, where the Court said that "in suits against federal officials for alleged deprivations of constitutional rights, it is necessary to satisfy the amount in controversy requirement for federal jurisdiction." In fact, the plaintiffs apparently recognized that they had the burden of establishing the requisite jurisdictional amount in controversy, for they alleged damages in the requisite amount. They admitted such allegations did not relate to actual damages, only to "symbolic damages" incapable of being measured "in terms of dollars and cents". But a claim not measurable in "dollars and cents" fails to meet the jurisdictional test of amount in controversy. This was initially held in Barry v. Mercein (1846) 46 U.S. 103 (5 How. 103, 12 L.Ed. 70), construing statutory language later incorporated in section 1331, when that statute was initially enacted in 1875. As suggested in the Note, 1972 Wis.L. Rev. 276, at p. 280, in employing like language in the amendment of 1875, it is fair to assume that Congress intended to give to it the same gloss attached earlier to the same expression by the decision in *Barry*. And this has been the con-

---

4. Appendix, p. 59.

5. Sustaining the view that jurisdictional amount is essential, *see* Goldsmith v. Sutherland (6th Cir. 1970) 426 F.2d 1395, 1397, cert. den. 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270, Boyd v. Clark (3–judge ct. N.Y. 1968) 287 F.Supp. 561, 564, aff. 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511, reh. den. 393 U.S. 1112, 89 S.Ct. 852, 21 L.Ed.2d 812; Giancana v. Johnson (7th Cir. 1964) 335 F.2d 366, 369, cert. den. 379 U.S. 1001, 85 S.Ct. 718, 13 L.Ed.2d 702. Wright, Federal Courts, p. 110 (2d Ed. 1970), states the rule thus:

"A challenge to the validity of action by the federal government does not ordinarily come within any of the statutes granting jurisdiction without regard to amount, and thus the jurisdictional amount must be satisfied."

*See, also*, ALI, Study of the Division of Jurisdiction Between State and Federal Courts, pp. 172–3 (1969).

Cf., however, Spock v. David (3d Cir. 1972) 469 F.2d 1047; Cortright v. Resor (D.C.N.Y.1971) 325 F.Supp. 797, rev. on other grounds, 447 F.2d 245, cert. den. 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed. 2d 240. The latter case is analyzed in 1972 Wis.L.Rev. 176 (1972).

struction of Section 1331 followed generally in the decisions construing such Section. Goldsmith v. Sutherland, *supra*; Giancana v. Johnson, *supra*; Rosado v. Wyman (2d Cir. 1969) 414 F.2d 170, 176, reversed on other grounds 397 U.S. 397, 90 S.Ct. 1270, 25 L.Ed.2d 442; Boyd v. Clark (3-judge Ct.N.Y.1968), *supra*; Yoder v. Assiniboine and Sioux Tribes of Fort Peck Ind. Res. (9th Cir. 1964) 339 F.2d 360, 364; cf., however, Cortright v. Resor (D.C.N.Y.1971) 325 F.Supp. 797, 808–811, rev. on other grounds, 447 F.2d 245; and Note, A Federal Question: Does Priceless Mean Worthless; 14 St. Louis L.J. 268 (1969).

**██** The plaintiffs complain, however, that dismissal of their federal action on jurisdictional grounds will leave them remediless, since state courts are closed to them in actions against federal officials. While not clearly stated, their argument seems to be that a federal remedy is constitutionally mandated on due process grounds, if their alleged constitutional deprivations are without remedy in the state courts.[6] The initial difficulty with this contention is that it is by no means clear that the plaintiffs are precluded from relief in the state courts.[7] But whether there is a state remedy or not provides no warrant for the courts to extend "federal question" jurisdiction beyond the limits fixed by Congress. The authority "to control lower federal court jurisdiction" is specifically vested in Congress under Article III of the Constitution.[8] Accordingly, in determining the boundaries of "federal question" jurisdiction, courts must look to the Congressional enactment fixing that jurisdiction, not to the Constitution, remembering as Justice Frankfurter bluntly put it in Romero v. International Term. Co. (1959) 358 U.S. 354, 379, 79 S.Ct. 468, 484, 3 L.Ed.2d

368 that in such inquiry "[I]t is a statute, not a Constitution, we are expounding". Actually, from 1789 to 1875 federal courts exercised no "federal question" jurisdiction, and this was true whether there was a state remedy available or not, simply because there was no statutory authority for such jurisdiction.[9] And when Congress did provide statutory authority for such jurisdiction, " * * * it limited the jurisdiction by including the element of the sum or value of the matter in controversy, * * * * ", and this limitation as to amount in controversy "is not a mere matter of form, but is a necessary element." Giancana v. Johnson, *supra*, 335 F.2d at p. 368. Thus, whether the requirement of a jurisdictional amount be regarded as "an unfortunate gap in the statutory jurisdiction of the federal courts", as Judge Medina characterized it in Wolff v. Selective Service Local Board No. 16 (2d Cir. 1967) 372 F.2d 817, 826, or not, "the fact remains" that the "gap" does exist and it can only be filled in by Congress and not by judicial legislation. This conclusion is in conformity with the language in *Lynch*, quoted *supra*, which would be an inaccurate statement of the law if the position of the plaintiffs on this point were sound and if the jurisdictional amount provision in Section 1331 were inapplicable in the very type of case to which Justice Stewart states it did apply in *Lynch*. In short, if the statute as it presently exists, with its "unfortunate gap", operates to deny the plaintiffs resort in this case to the District Court, it does no more than Congressional inaction did for almost a century prior to 1875 in all "federal question" cases and is no more invalid.

**█** Nor can jurisdiction be founded on Section 1361, which confers "original

---

6. See Note, The Constitutional Implications of the Jurisdictional Amount Provision in Injunction Suits Against Federal Officers, 71 Col.L.Rev. 1474 (1972).

7. See, Note, 1972 Wis.L.Rev. 276 at p. 286; 1 Moore's Federal Practice, pp. 247–8; Arnold, The Power of State Courts to Enjoin Federal Officers, 73

Yale L.J. 1385, 1394 (1964); Lewis Pub. Co. v. Wyman (C.C.Mo.1907) 152 F. 200, 205.

8. See 1972 Wis.L.Rev. 276 at p. 290 (1972).

9. 1 Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.1960) pp. 120–1, n. 61.

jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States * * * to perform a duty owed to the plaintiff." In a similar case, involving, among other issues, the right of the plaintiffs to distribute leaflets on an army base, the Court held that jurisdiction would not lie under 1361. Spock v. David, *supra*.[10] In that case, the Court said 469 F.2d p. 1050.

"28 U.S.C. § 1361 is one of the grants of federal jurisdiction to which no jurisdictional amount is attached. But by no fair reading could the complaint be construed as alleging an action in mandamus to compel David and Laird to perform a duty owed to the plaintiffs. Under plaintiffs' theory in the complaint defendants are acting outside of their authority. It sets forth a suit in equity for an injunction against interference with civil rights protected by the first amendment. The only basis for federal jurisdiction is the general grant of federal question jurisdiction found in 28 U.S.C. § 1331, and to that grant Congress has attached a jurisdictional amount."

It must be remembered that Section 1361, enacted in 1962, was not adopted for the primary purpose of enlarging the scope of mandamus relief but simply of broadening the scope of venue in mandamus proceedings. See Senate Report No. 1992, 87th Congress, 2d Sess., pp. 2–4 (1962).[11] The phrase "in the nature of mandamus" in the statute was added at the instance of.the Department of Justice for the express purpose of emphasizing this fact.[12] It follows, then, that in order for an action to qualify jurisdictionally under Section 1361, it must satisfy generally the traditional criteria for a mandamus proceeding. Those criteria have been often stated in proceedings which sought to qualify jurisdictionally under 1361. In Guffanti v. Hershey (D.C.N.Y.1969) 296 F.Supp. 553, 555 such criteria were summarized thus:

"* * * before such a writ (of mandamus) may issue it must appear that the claim is clear and certain and the duty of the officer involved must be ministerial, plainly defined, and peremptory. The duty sought to be exercised must be a positive command and so plainly prescribed as to be free from doubt."

Similar language has been used in other cases involving resort to Section 1361 as a source of jurisdiction.[13] Under these

10. Cf. Byse and Fiocea, Section 1361 of the Mandamus and Venue Act of 1962 and "Non-statutory" Judicial Review of Federal Administrative Action, 81 Har.L. Rev. 308 at p. 375, n. 156:

"A close question might arise, if, in an action where section 1361 were the sole basis of jurisdiction, the plaintiff sought declaratory relief as to a matter which would normally be a subject of negative rather than affirmative injunctive relief, such as a declaratory judgment against the enforcement of an impending regulatory order."

11. Rural Electrification Admin. v. Northern States Power Co. (8th Cir. 1967) 373 F.2d 686, 694, n. 14, cert. den. 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332; Prairie Band of Pottawatomie Tribe of Indians v. Udall (10th Cir. 1966) 355 F.2d 364, 367, cert. den. 385 U.S. 831, 87 S.Ct. 70, 17 L.Ed.2d 67; Smith v. United States (10th Cir. 1964) 333 F.2d 70, 72; Dover Sand & Gravel, Inc. v. Jones (D.C.N.H.1963) 227 F.Supp. 88,

90. In Davis v. Shultz (3d Cir. 1971) 453 F.2d 497, 502, the Court said that a majority of the Circuit Courts of Appeals, in their consideration of Section 1361, had concluded "that § 1361 and its accompanying venue amendments were designed to eliminate obstacles to bringing mandamus actions outside of the District of Columbia and were not meant to alter the traditionally limited nature of the writ. Under this view, mandamus will lie only to compel the performance of a plain duty and will not lie to compel the discharge of an action committed to discretion."

12. See Byse and Fiocea, Section 1361 of the Mandamus and Venue Act of 1962 and "Non-statutory" Judicial Review of Federal Administrative Action, 81 Har.L. R. 308 (1967), *supra*.

13. To the same effect are: United States v. Walker (9th Cir. 1969) 409 F.2d 477, 481; McClendon v. Blount (7th Cir. 1971) 452 F.2d 381, 383; Prairie Band of Pottawatomie Tribe of Indians v. Udall, *supra*, 355 F.2d at p. 367.

criteria, mandamus may be an appropriate remedy in a case such as Burnett v. Tolson (4th Cir. 1972) where a camp commander, contrary to the holding in Flower v. United States (1972) 407 U.S. 197, 198, 92 S.Ct. 1842, 32 L.Ed.2d 653, is attempting to bar the exercise of First Amendment rights in camp areas dedicated to the public use as public streets.[14] In such a case it can be contended the duty of the defendant is clear and free from doubt. There may, also, be the rare case where, as suggested in Nixon v. Secretary of Navy (2d Cir. 1970) 422 F.2d 934, 939, and held in Kiiskila v. Nichols (7th Cir. 1970) 433 F.2d 745,[15] the official, in the exercise of his discretion, "may go so far beyond the limits of what may be considered a rational exercise of discretion as to call for mandamus." But we have here no such clearly defined duty on the part of the base commander nor authoritatively established right on the part of the plaintiffs as in Flower or Burnett, no stretching arbitrarily by the base commander "beyond the limits of what may be considered a rational exercise of discretion" as in Kiiskila. The camp chapels had not been converted into public chapels for use by the general public. So far as the record establishes, they have been exclusively used for religious exercises, conducted under the supervision of the camp chaplains for the benefit solely of military personnel. The chapels had not been made available for use by other groups, whether within or without the military family.[16] The plaintiffs freely conceded that their purpose was to propagandize anti-war sentiment through the exploitation of this meeting. They referred to the proposed meetings at one time as "protest" meetings. Reporters and photographers were to be invited to the meeting. The right of the plaintiffs to the use of an army chapel for the purposes stated by the plaintiffs in their several meetings with the camp chaplain was not plain nor was the duty of the camp commander to make it available for that purpose free from doubt. Accordingly, even if the ruling in Spock that 1361 is inapplicable not be followed, traditional rules governing the issuance of the writ of mandamus foreclose jurisdiction under 1361 in this case.

## II.

There was a second basis for dismissal. Military procedures, as embodied in Section 938, 10 U.S.C., and as set forth in Army Regulations, provide a method of appeal from the action of the camp commander in this case.[17] This

---

14. Cf., Spock v. Davis, *supra.* This case was, however, broader than *Burnett.* It involved the right to hold political meetings on the base.

15. In *Nixon,* the Court held that there was not such an irrational exercise of discretion. In *Kiiskila,* there was a clear going "beyond the limits"; the plaintiff, a civilian employee at the military base, was denied access to the base because of the exercise of First Amendment rights *off the base.*

16. Cf., United States v. Crowthers (4th Cir. 1972) 456 F.2d 1074, 1079.

17. Art. 138 (10 U.S.C. § 938):

"Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon."

See Cortright v. Resor (2d Cir. 1971) 447 F.2d 245, 253, reversing D.C., 325 F. Supp. 797.

itself is clear from both Army regulations and statute. Indeed, such a right is essential in any organization which is inevitably hierarchical and hence In Smith v. Resor (2d Cir. 1969) 406 F.2d 141, 147, the Court said:

"The right to review an order or decision within the military establishment particularly subject to those prejudices or arbitrary decisions which are part of man's psychological fabric. Thus, 10 U.S.C. § 938 provides that a member of the armed forces who believes him-

administrative remedy within the procedures provided in the military administration system was admittedly known to the plaintiffs. It is well settled that, "Exhaustion of administrative remedies provided by the military service is a required predicate to relief in the civil courts." [18] Before resorting to court action, the plaintiffs were accordingly obligated to exhaust the administrative remedy thus provided within the military system. They could not escape this obligation with the claim that they were not on "any level of technical equality as it applies to military law" with the officers to whom they had directed their application. The plaintiffs were not, by their own admission, novices in the field of military law. They conceded they knew of the right to appeal. At least one of the plaintiffs had exercised the right of appeal under the applicable statute and regulations. The complaint was accordingly properly dismissed for failure to exhaust administrative remedies.

Affirmed.

self wronged by his commanding officer may complain to any superior commissioned officer. In addition, all military personnel have the right to register complaints with an Inspector General. See Army Regulation 20–1."

18. United States ex rel. Taylor v. Fritz (8th Cir. 1971) 446 F.2d 36, 37; Gonzales Salcedo v. Lauer (9th Cir. 1970) 430 F.2d 1282, 1283; Karpinski v. Resor (3d Cir. 1969) 419 F.2d 531, 532; United States ex rel. Berry v. Commanding General (5th Cir. 1969) 411 F.2d 822, 824; Sohm v. Fowler (1966) 124 U.S.App.D.C. 382, 365 F.2d 915, 917.

For justification of the exhaustion requirement, see McGee v. United States (1971) 402 U.S. 479, 483–484, 91 S.Ct. 1565, 29 L.Ed.2d 47, note 6.