Roy R. **ATWELL,** Plaintiff,

v.

Verne **ORR,** Secretary of the United States Air Force, and Commander, 437th Air Base Group, Charleston Air Force Base, Charleston, South Carolina, Defendants.

Civ. A. No. 84–0563–1.

United States District Court, D. South Carolina, Charleston Division.

June 20, 1984.

---

Richard J. Paul, North Charleston, S.C., for plaintiff.

Robert H. Bickerton, Asst. U.S. Atty., Charleston, S.C., and Guy J. Sternal, Major, U.S.A.F. General Litigation Division, Washington, D.C., for defendants.

## ORDER

HAWKINS, District Judge.

The plaintiff in this case, Roy R. Atwell, seeks, *inter alia*, a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, to prevent his discharge from the United States Air Force. The defendants move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the plaintiff's complaint for lack of subject matter jurisdiction. For the reasons stated below, this court is of the opinion that defendants' motion to dismiss should be denied and plaintiff's motion for a preliminary injunction should be granted.

### A. FACTS AND PROCEDURAL HISTORY

The facts in this case are largely undisputed. The plaintiff, Technical Sergeant Roy R. Atwell, is an enlisted member of the Regular Air Force. He is currently performing duty at Charleston Air Force Base, Charleston, South Carolina. Sergeant Atwell enlisted in the Air Force on May 7, 1969. At that time, he weighed about 245 pounds and was, as he is now, 68 inches tall. He reenlisted on November 15, 1972, and November 15, 1976. On each occasion he exceeded the Air Force weight standard then in effect and applicable to him. Nevertheless, the standard, in each instance, was waived.

In 1977, however, the Air Force took a different position. Sergeant Atwell's Squadron Section Commander notified him on October 21 that he was being entered into the Air Force weight control program; he would be required to lose an average of three (3) pounds per month. At this date, he weighed 239 pounds, 55 pounds over his maximum authorized weight of 184 pounds.

On March 15, 1977, the Air Force notified Sergeant Atwell that he was not losing weight quickly enough. It reprimanded him. Two subsequent, similar reprimands, issued on March 15, 1978 and September 26, 1978, were put in his "Unfavorable Information File." Later, Sergeant Atwell was placed on control roster and under a 120 day special observation period. During this period, he would "not be eligible for promotion or promotion consideration ... and not eligible for reenlistment ...." [Ct. Ex. 9]. By letter dated December 18, 1978, the Air Force notified Sergeant Atwell that he was not being recommended for promotion to technical sergeant because of "lack of compliance with the Air Force Weight Control Program ...." [Ct. Ex. 9].

In a January 1979 performance report, Sergeant Atwell received perfect marks in all categories from two (2) of the three (3) officials who graded him. One official, however, marked him down in "BEARING AND BEHAVIOR" and provided this explanation for the low grades. "SSgt. Atwell has continued to be in violation of USAF weight control requirements." [Def.Ex. 5]. On the other hand, the other officers noted that he "has been of the

utmost in professional reliability and application ... [and] recommend[ed] him for promotion ahead of his contemporaries." [Def. Ex. 5].

Unhappy with the comment and grades, Sergeant Atwell applied to Air Force Board for Correction of Military Records ("AFBCMR"). He requested that it delete the comment and grades from his performance report. While this application was pending, he was again graded down in another performance report because of his weight, placed on another 120-day special evaluation period because of lack of progress in the weight control program, and notified that he was being denied reenlistment for failure "to meet the desired weight standards." [Ct. Ex. 9].[1]

After filing the request, Sergeant Atwell asked the Air Force to discharge him. He wanted out because he was tired of being harrassed about his weight. The Air Force refused to discharge him because it was "inconsistent with the best interests of the Air Force ...." [Pl. Ex. 1].

Before the AFBCMR ruled on his request, Sergeant Atwell lost the weight necessary to *comply* with the weight standards. From January of 1980, when he weighed 237 pounds, to June 1981, when he weighed 192 pounds,[2] he apparently lost 40 pounds. He remained in the Air Force because he applied for and was granted two (2) extensions, dated September 11, 1980, and April 27, 1981, of his current enlistment due to expire on November 15, 1980.

Therefore, on June 8, 1981, Sergeant Atwell received this one sentence letter from his Commander: "Due to satisfactory progress in the Weight Control Program you have been selected for reenlistment in the US Air Force, effective 9 June 1981."

1. This second performance report, as well as the question of whether to grant a waiver for reenlistment, were also considered by the AFBCMR.

2. Sergeant Atwell asserts that the records are incorrect and that he actually weighed around 205 pounds at this point in time.

3. The full text of the minority report is set forth as follows:

[Def. Ex. 2]. He was, however, advised that he must continue to meet the standards.

Your current weight of 192 is within Air Force standards. However, I must advise you that should you allow your weight to exceed these standards within the next 12 months, you may be subject to one or more of the administrative actions outlined in AFR 35–11, paragraph 20 and Tables 1 and 2. [Def. Ex. 1].

Instead of immediately reenlisting, Sergeant Atwell elected to enter his third extension on June 9, 1981. He stated on the form: "I know that I can reenlist rather than extend, but I have elected to execute this extension of my current enlistment instead of reenlisting." [Def. Ex. 3].

His rationale for extending instead of reenlisting is quite simple; he wanted to be assigned and cross-trained in the nuclear weapons field. Once trained in this area, he would possess special skills which would make him more valuable to the Air Force and, therefore, less likely to be discharged because of weight. In addition, he would be rewarded with a reenlistment bonus.

On July 21, 1981, Sergeant Atwell executed his fourth extension for a 14-month period. This extension was effective through September 21, 1982.

Five (5) days later, the AFBCMR acted on Sergeant Atwell's application. The majority report, which was *not* adopted by Assistant Secretary of the Air Force ("the Secretary"), recommended that the adverse comments and grades be removed from the two (2) performance reports but that he *not* be granted a weight waiver to reenlist. The minority report, however, in addition to recommending that the performance reports be corrected, proposed that Sergeant Atwell be granted a weight waiver.[3] The

I agree with the majority opinion for voidance of the APRs but I do not agree with their opinion that they should not grant the applicant a weight waiver to allow his reenlistment. My reasons are outlined below.

The applicant originally enlisted in the Air Force in 1969. The weight indicated on his reenlistment contract was 232 pounds. Though not documented in his records, the

Secretary adopted the recommendation of the minority report and issued the following directive:

> Having received and considered the recommendation of the Air Force Board for Correction of Military Records and under the authority of Section 1552, Title 10, United States Code ... it is directed that:
>
> a. The pertinent military records of the Department of the Air Force relating to ROY R. ATWELL ... be corrected to show that ... PERFORMANCE REPORTS rendered on him for the period 19 January 1978 through 18 January 1979 and 19 January 1979 through 17 September 1979 be, and hereby are, declared void and removed from his records.
>
> b. He *was granted a waiver of his current weight by competent authority, and is eligible to cancel his current extension and reenlist in the United States Air Force.* (emphasis added) [Def. Ex. 5].

applicant has stated that he was granted a weight waiver to enlist. The applicant further states that he was granted a weight waiver to reenlist in 1972 and in 1976. His weight is not documented for 1972, however, it is documented on his enlistment contract for 1976 as 210 pounds.

The applicant was denied reenlistment by the Air Force on 19 November 1980; (his weight status as of 3 November 1980 was reflected as 209 pounds). He has subsequently been extended to 14 May 1982.

The applicant has been in the Air Force for 12 years with a consistently outstanding record of performance, to include service in Vietnam. The Air Force initially enlisted him when he was considerably overweight and during his twelve years of service he has had a continuous weight problem. Weight notwithstanding, the applicant's performance has been consistently outstanding. I believe the Air Force is a little "remiss" in penalizing him at this late date because of weight. The records further indicate that the applicant has made numerous and concerted efforts to control his weight.

While there have been no guarantees given to the applicant for reenlistment, the Air Force has retained him despite the continued weight issue. With twelve years of outstanding service, the applicant's presumption that he should be provided an opportunity to complete an Air Force career is both reasonable

Sergeant Atwell did not accomplish a reenlistment. He testified at a March 28, 1984, Rule to Show Cause hearing that in September 1981 he went to his Squadron Section Commander, Lieutenant Persephone E. Kalouf, to have her approve his reenlistment. He alleges that he showed her the Secretary's directive, but she refused to approve his reenlistment.[4] At this time, Sergeant Atwell's records reflect that he met the weight standard. He continued to serve on his July 21 extension.

On February 26, 1982, he received a letter from Lieutenant Kalouf placing him "back on the remedial weight control program ...." [Def. Ex. 8]. Another letter dated the same day and authored by her stated that "[b]ecause of your unsatisfactory progress in the Air Force Weight Control Program, you are hereby placed under special observation for a period of 120 days ...." [Def. Ex. 8]. According to the weight records, he weighed 192 pounds in December 1981 and 249½ pounds in Febru-

and just. Given the Air Force's action to waive weight standards on the initial and subsequent enlistments, it would seem that we now have a greater burden in showing cause for the separation of the applicant than simply his failure to meet the current weight requirements.

I do not agree that the Board would be setting a precedent by granting the applicant a weight waiver to reenlist, especially in light of the policy which governs the officer force wherein officers can be released for weight problems only if their weight impedes their performance of duty, as governed by AFR 36–3, paragraph 4g. To deny this airman the opportunity to reenlist solely on the basis of his weight, when his performance of duty has not been impaired, surely implies that an inequity or injustice prevails.

In view of the foregoing, I would vote to void the applicant's APRs and grant him a weight waiver to reenlist.

Mr. Robert W. Crittenden
Panel Member

4. The Air Force asserts that Sergeant Atwell never attempted to reenlist. This assertion does not appear to be accurate. A February 25, 1982, Inspector General Request indicates he requested the following specific action: "my current assignment and cross-training not be cancelled, and if it is [,] *that I be allowed to re-enlist ...*" (emphasis added) [P1. Ex. 2].

Sergeant Atwell lost some weight but received a reprimand from Lieutenant Kalouf in September of 1982 because he gained 18 pounds during the preceding month. "As a result of your failure to *meet* and *maintain* Air Force weight standards, you are hereby severely reprimanded." (emphasis added) [Def. Ex. 8].

From September 1982 to January 1983 his weight dropped from 254 pounds to 218 pounds, a loss of 36½ pounds. In February, however, he gained 25 pounds. As a result, he was placed on the Air Force fitness program. He was ordered to "remain on this program until *you have reached your maximum allowable weight*." [5] (emphasis added) [Def.Ex. 8].

Apparently, the Air Force thought Sergeant Atwell's progress was not satisfactory. Even though he lost 5½ pounds during March 1983, it cancelled his assignment to Kunsan, Korea because of his "weight status." Later that year, the Air Force requested that he be assigned to the Inpatient Obesity Treatment Program. The request noted that his "maximum allowable weight is 193 pounds." [Def. Ex. 8]. Due to a backlog of Navy assignees, the request was refused.

On January 10, 1984, the Air Force let Sergeant Atwell know that he was at the end of his rope. His Squadron Section Commander stated that

> [f]rom this date forward, I expect you to gain no weight. If you gain weight between now and 3 February 1984, I will have no choice but to recommend that you be denied reenlistment. If you lose weight, continue to lose weight and can show a more than just satisfactory weight loss of 6 lbs. in this 60 day period, I will recommend your enlistment be extended for 60 days to see how you continue to progress.
>
> I must also warn you that you are currently on control roster until 4 February

1984. Any weight gain during this observation period could result in your being denied reenlistment. [Def. Ex. 8]

On February 2, 1984, the Air Force permitted Sergeant Atwell to execute a 60 day extension. But on February 27, his Squadron Commander reprimanded him because of his weight and told him that "*Air Force regulations concerning weight standards are very specific and let me assure you that the 437th Supply Squadron will abide by these regulations.*" (emphasis added) [Def. Ex. 8].

Sergeant Atwell commenced this action on March 19, 1984. He seeks money damages for back wages, a promotion, injunctive and declaratory relief. He alleged jurisdiction pursuant to 28 U.S.C. § 1361 and 28 U.S.C. § 2201. On the same date, the court issued a temporary restraining order preventing Sergeant Atwell's discharge. A Rule to Show Cause hearing was conducted on March 28, 1984. At that time, the defendants raised the issue of subject matter jurisdiction. The court took the matter under advisement and requested additional briefs on the issue. On May 8, 1984, the court heard oral arguments on the matter. At that time, the plaintiff moved to amend his complaint to allege jurisdiction pursuant to 28 U.S.C. § 1364 and 10 U.S.C. § 1552. The court agreed, with the defendants' consent, to treat the complaint as so amended.

### B.  SUBJECT MATTER JURISDICTION

The plaintiff argues that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1361 and 10 U.S.C. § 1552(a). Specifically, Sergeant Atwell maintains that his superior officers never carried out the directive of the Secretary which was to allow him to cancel his extension and permit him to reenlist. He asks the court to issue a writ of mandamus to compel the defendants to carry out the directive. The defendants' position is that Sergeant Atwell had to take immediate advantage of

---

**5.** It is clear that the Air Force was requiring him to meet its weight standard. Sergeant Atwell's weight progress charts for this period record that his maximum allowable weight was 193 pounds. This is the same weight required for an airman 68 inches tall.

his reenlistment opportunity, and it was not a bar to future denial of reenlistment for failure to meet the weight standards.

Title 10, United States Code Section 1552(a) provides in pertinent part that

[t]he Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of the military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.... *Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.*

10 U.S.C. § 1552(a) (emphasis added).

Title 28, United States Code Section 1361 gives to the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States ... to perform a duty owed the plaintiff." 28 U.S.C. § 1361.

■ In many cases "Section 1361 ... provide[s] a jurisdictional basis for review of military decisions ... in situations in which it would have been difficult to establish $10,000 in controversy ....'" MOORE'S FEDERAL PRACTICE ¶ 0.62[17] p. 700.55. Under section 1361, as well as historically, the writ of mandamus is an extraordinary remedy to be issued only in extraordinary circumstances. In order to demonstrate the right to mandamus relief, a plaintiff must show:

1) that a public official has a plain duty to perform certain acts;

2) that the plaintiff has a plain right to have those acts performed; and

3) that there exists no other adequate remedy by which plaintiff's rights can be vindicated.

*Cook v. Arentzen,* 582 F.2d 870, 876 (4th Cir.1978), *quoting* MOORE'S FEDERAL PRACTICE ¶ 0.62[17], p. 700.51. If any one of the three prerequisites to mandamus relief is not present, the writ is not available to the plaintiff, and the court is with-

out jurisdiction. *Cook v. Arentzen,* 582 F.2d at 876; *City of Milwaukee v. Saxbe,* 546 F.2d 693 (7th Cir.1976); *Parrish v. Seamans,* 343 F.Supp. 1087 (D.S.C.1972), *aff'd,* 485 F.2d 571 (4th Cir.1973); *Burnett v. Tolson,* 474 F.2d 877 (4th Cir.1973); *McGaw v. Farrow,* 472 F.2d 952 (4th Cir. 1973); *Carter v. Seamans,* 411 F.2d 767 (5th Cir.1969).

It is an "established principle that mandamus jurisdiction is present only when [a] peremptory duty is shown." *City of Milwaukee v. Saxbe,* 546 F.2d at 700. Title 10, United States Code Section 1552 makes any action, except that procured by fraud, final and conclusive on *all* officers. Given the clarity of the Secretary's directive, Sergeant Atwell's superior officers had a *plain duty* to perform two (2) acts; permit him to cancel his then-current extension and allow him to reenlist. In July of 1981, Sergeant Atwell executed a 14-month extension effective through September 21, 1982. It would require a tortured construction of the Secretary's directive to reach the conclusion that Sergeant Atwell had to take immediate advantage of the reenlistment opportunity or lose it. The gravamen of his complaint is that he attempted to reenlist in September 1981 but was prevented from doing so. Clearly he had the option at any time during the period covered by the extension to reenlist as long as he was at or below the weight of 209 pounds.[6] The defendants have not adduced any evidence which indicates Sergeant Atwell was given the benefit of even a limited waiver. The Secretary's directive would be a wholly worthless piece of paper if it was not a bar to a future reenlistment denial.

■■ "Though it [mandamus] is a legal remedy, it is largely controlled by equitable principles ...." *Carter v. Seamans,* 411 F.2d at 773. If the defendants would not permit reenlistment when he weighed less than 209 pounds, then the fact that he did not meet the standards after 1981, or that he does not meet them now, would not bar the use of mandamus. Equity regards that

---

**6.** The minority report recommended a waiver based upon this weight.

done which ought to have been done; 2 POMEROY EQUITY JURISPRUDENCE § 363 (5th ed. 1941), and resolves uncertainties against those whose wrongful acts or omissions created them. *See Bigelow v. RKO Pictures*, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946). Because the Secretary's directive was final and conclusive, the officers of the Air Force had a clear duty to perform these acts. Sergeant Atwell had the clear right to have them performed. The court rejects the defendants' hypertechnical construction of the directive.

Sergeant Atwell has once completed the long, arduous administrative process. Notwithstanding the Secretary's order to allow him to reenlist, the Air Force, since September 1981, has allegedly sought to accomplish his discharge. It would only encourage future defiance for this court to require Sergeant Atwell to resort again to the administrative process. Moreover, there is no certainty, if the allegations are true, that the Air Force would obey a future administrative decision.

This case is also clearly distinguishable from *Parrish v. Seamans* where it was held that mandamus was not proper because plaintiff had an adequate remedy in the Court of Claims under 28 U.S.C. § 1491. Sergeant Atwell claims only a nominal amount of money damages, well under $10,000. In *Parrish* "the keystone of the plaintiff's entire lawsuit [was] the claim for a money judgment against the United States." *Parrish v. Seamans*, 343 F.Supp. at 1093. In this case, the "keystone" of the plaintiff's lawsuit is his request for mandamus, injunctive and declaratory relief. Title 28, United States Code Section 1491 permits the Court of Claims to employ equitable remedies, but only if they are "incident of and collateral to" a money judgment. 28 U.S.C. § 1491. Therefore, the court finds that Sergeant Atwell has no other adequate remedy but a writ of mandamus.

## C. PRELIMINARY INJUNCTION

■ In *Maryland Undercoating Co., Inc. v. Payne*, 603 F.2d 477 (4th Cir.1979), the Fourth Circuit Court of Appeals set forth the balance-of-hardship test to determine whether preliminary injunctive relief is or is not appropriate.

The first step in determining whether interlocutory injunctive relief should issue is for the court to balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction. If a decided imbalance of hardship should appear in plaintiff's favor, it is enough that grave or serious questions are presented; plaintiff need not show a likelihood of success on the merits. The need for plaintiff to show likelihood of success on the merits increases as the probability of irreparable injury to the plaintiff without an injunction decreases. Finally, the court should consider wherein lies the public interest, sometimes described as preserving the *status quo ante litem* until the merits of a serious controversy can be fully considered by a trial court.

603 F.2d 481–82; *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977).

The likelihood of harm to plaintiff without an injunction is great. Sergeant Atwell has a wife and two (2) small children to support. He testified that a discharge while this action was pending would have a substantial, negative impact on his ability to support his family. In addition, it would prevent him from pursuing this case at the trial stage and, potentially, on appeal. In effect, a discharge would terminate this litigation. It would be cold comfort to the plaintiff if this court ruled in his favor on the jurisdictional issue but prevented him from pursuing his claim by allowing the Air Force to discharge him.

The likelihood of harm to the defendants with an injunction is slight. Since Sergeant Atwell's initial enlistment, the Air Force has employed him on repeated reenlistments and extensions despite his inability to meet weight standards. Apparently, the Air Force suffered little harm during

his 14-year tenure. The court cannot see how the Air Force would be harmed by him remaining on active duty during the pendency of these proceedings. All of Sergeant Atwell's performance reports show excellent performance usually above and beyond the call of duty. The only negative information his records showed prior to the filing of this action was his inability to meet weight standards. Therefore, the court finds that the likelihood of irreparable harm to Sergeant Atwell without an injunction outweighs the likelihood of irreparable harm to the defendants with an injunction.

This case presents the grave question of whether Air Force officers complied with a directive issued by the Secretary of the Air Force. Finally, a preliminary injunction preventing Sergeant Atwell's discharge would only preserve the *status quo* that has existed for the past 14 years. It is, therefore,

ORDERED, that defendants' motion to dismiss be, and the same is hereby, denied. It is

ORDERED FURTHER, that plaintiff's motion for a preliminary injunction be, and the same is hereby, granted.

AND IT IS SO ORDERED.