**Bishop P. PARRISH, Plaintiff,**

v.

**Robert F. SEAMANS, United States Secretary of the Air Force, Defendant.**

**Civ. A. No. 71–1260.**

United States District Court,
D. South Carolina,
Columbia, Division.
May 25, 1972.

George W. Gregory, Jr., Cheraw, S. C., for plaintiff.

John K. Grisso, U. S. Atty., D. S. C., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

The plaintiff, Bishop P. Parrish, while serving as a member of the United States Air Force, was tried by General Courts-Martial on March 7 through March 25, 1955, and found guilty of the following offenses, which were affirmed by the Air Force Board of Review and the United States Court of Military Appeals: [1]

Charge 1, Article 81, Specification 1: *As Amended*: Did, at Tokyo, Japan, between about 1 Feb 54 and about 28 Feb 54, conspire with Captain Jerry M. Hartz to commit an offense under the UCMJ, to wit: Wrongfully and willfully loan to the said Colonel Bishop P. Parrish, Jr., in a manner not authorized by law, $2,500 of public monies of the U.S. intrusted to the said Captain Jerry M. Hartz, the said Captain Jerry M. Hartz then being FEAF Base Finance Officer, a disbursing officer of the U.S., and in order to effect the object of the conspiracy, the said Captain Jerry M. Hartz did, o/a 1 Mar 54, sign as a disbursing officer, USAF, and deliver to the said Colonel Bishop P. Parrish, Jr., a certain check drawn on The Treasurer of the U.S. in the amount of $2,500, payable to Bishop P. Parrish, Jr., and the said Colonel Bishop P. Parrish, Jr., did, o/a 1 Mar 54, accept said check and sign a WDAGO Form 14–48, Receipt for Funds Intrusted to Agent Officer.

Charge 3, Article 134, Specification 1: *Did, in conjunction with Captain Jerry M. Hartz, o/a 1 Mar 54, at Tokyo, Japan, wrongfully and willfully loan to the said Colonel Bishop P. Parrish, Jr., in a manner not authorized by law, $2,500 of public monies of the U. S. intrusted to the said Captain Jerry M. Hartz, the said Captain Jerry M. Hartz then being FEAF Base Finance Officer, a disbursing officer of the U.S.*

Charge 3, Article 134, Specification 3:

Did at Tokyo, Japan, o/a 25 Aug 54, in his testimony given to Philip P. Benzell, a Special Agent of the OSI, duly detailed to conduct an investigation, upon being asked the question, "Did you personally deliver $2,500.00 in U.S. currency to Captain Hartz in

1. There were other charges and specifications lodged against the plaintiff, some of which the plaintiff was found not guilty by the General Courts-Martial and some of which were subsequently reversed by the Board of Review, United States Air Force, ACM 11127, on December 30, 1955.

exchange for this check on 1 March 1954?" wrongfully and unlawfully answer under lawful oath, "On or about that date, I personally gave Hartz $2,500.00 in exchange for the check", which answer he did not then believe to be true.

The General Courts-Martial sentenced plaintiff to dismissal from the service, total forfeitures of all pay and allowances, and confinement at hard labor for two years. The Air Force Board of Review reduced the period of confinement to one year, and upon completion of his sentence the plaintiff was dismissed from the service by order of the Secretary on October 26, 1956. In addition to appealing his conviction to the United States Air Force Board of Review and the United States Court of Military Appeals, the plaintiff appealed to the Air Force Board for Correction of Military Records on several occasions. Relief was granted on November 7, 1969, when upon recommendation of the Board, and under the authority of 10 U.S.C.A. § 1552, plaintiff's records were corrected to show that on October 26, 1956, he was administratively discharged pursuant to 10 U.S.C.A. § 874(b) with an honorable discharge certificate. At the time of the dismissal, plaintiff held the rank of Colonel and had accumulated some fifteen years of service in the military. Contending that his conviction and subsequent dismissal were in violation of his constitutional rights in that he was deprived of his right to be confronted with witnesses against him, denied his right to assistance of counsel, and compelled to be a witness against himself, plaintiff instituted this action on December 23, 1971. The specific relief sought is that the trial and conviction of the plaintiff be declared unconstitutional and null and void. Plaintiff further seeks a Writ of Mandamus compelling defendant to restore all rank, pay, allowances (including basic pay, flight pay, dependents' quarters allowances, and subsistence), reimbursement for medical care for himself and his dependents that he would have received from the date of his unlawful discharge until the date he would have retired, and all entitlements and privileges forfeited by him as a result of his conviction.

This matter is now ripe for consideration by the court pursuant to defendant's motion to dismiss and plaintiff's motion for summary judgment.

The plaintiff claims jurisdiction pursuant to 28 U.S.C.A. § 1361, which provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

This action seeks to require the defendant to act under his authority as set forth in 10 U.S.C.A. § 1552, which provides, in relevant part:

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. . . . Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

The defendant contends that this court is without jurisdiction in that any collateral review, except by habeas corpus, is barred by Article 76 of the Uniform Code of Military Justice (UCMJ) which declares that action taken by a courts-martial is final and binding upon the courts of the United States. Article 76 provides:

The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval,

review, or affirmation as required by this chapter, are final and conclusive. Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon a petition for a new trial as provided in section 873 of this title (article 73) and to action by the Secretary concerned as provided in section 874 of this title (article 74) and the authority of the President. 10 U.S.C.A. § 876.

The plaintiff contends that Section 1552 is an exception to the "final and conclusive" provision of Article 76. In Ashe v. McNamara, 355 F.2d 277 (1965), the First Circuit reversed the district court, which had granted summary judgment for the Secretary of Defense, ruling that it had no jurisdiction of the subject matter. The First Circuit held that 10 U.S.C.A. § 1552 was an exception to, or authorized relief from, Article 76 of the U.C.M.J. Congress gave the Secretary the right to review courts-martials and, in so doing, specifically eliminated words from the bill which would have limited review by the courts.

Our analysis of this problem in the context of this case begins with section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 837, 10 U.S.C. § 1552, which in terms provided that the "Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice." This statute enabled the Secretary, acting through a civilian Correction Board, to change the kind of discharge a former service man had received and relieved Congress of the burden of the great number of private bills theretofore introduced at each session to accomplish such changes. Moreover, this power of review was conferred in sufficient generality to cover discharges pursuant to court-martial sentences as well as administrative discharges. To this extent Congress created an exception to or authorized relief from the mandate of the 76th Article of the Uniform Code of Military Justice that "all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive."

As originally enacted, the 1946 statute said nothing about the finality of the authorized administrative action. Shortly thereafter, the Comptroller General refused to recognize a change in the type of a discharge thus accomplished as affecting forfeiture of monetary benefits which attended the original discharge. 27 Decs.Comp. Gen. 665 (1958). In the light of this experience, an amendatory bill was introduced in Congress providing that monetary settlements attending administrative correction of records under the statute in question "shall be final and conclusive on all officers of the Government, including review by the courts of the United States, except when procured by means of fraud." * * * However, at the subcommittee hearings on this bill, members of the subcommittee expressed disapproval of the provision precluding judicial review. * * * the subcommittee eliminated from the bill the words "including review by the courts of the United States" and explained to the full committee that this was done "so that under appropriate circumstances the courts of the United States may review these matters." Ashe v. McNamara, pp. 280–281, supra.

\* \* \* \* \* \*

Congress having authorized administrative reconsideration and change of sentences that had become final, we think it was as much the duty of the Secretary and the Correction Board,

as it would have been of a court empowered to entertain a collateral attack upon some final decision, to treat as void a sentence thus unconstitutionally imposed. Ashe v. McNamara, p. 282.

The Tenth Circuit in Smith v. McNamara, 395 F.2d 896 (1968) adopted the view expressed in United States v. Augenblich, 377 F.2d 586, 180 Ct.Cl. 131 (1967). In quoting from *Augenblich* the court stated:

> "To deny collateral attack to one not in confinement—the consequence of saying that habeas corpus is the only remedy—would be to deny the possibility of review by a constitutional court, and ultimately by the Supreme Court, of the constitutional claims of servicemen * * * who have not been sentenced to jail or who have been released." For like reasons we conclude that the trial court was vested with jurisdiction to review by mandamus, as in habeas corpus, the "final" court martial decision even though Smith had completed the term of imprisonment imposed as a result of that conviction. Smith v. McNamara, 395 F.2d p. 899.

This reasoning was followed in Kauffman v. Secretary of The Air Force, 135 U.S.App.D.C. 1, 415 F.2d 991 (1969). In quoting from Gallagher v. Quinn, 124 U.S.App.D.C. 172, 363 F.2d 301, the court said:

> There is no adequate reason for looking to habeas corpus alone, or for thinking that Congress limited its exception from 'finality' to that specific proceeding. Liberty is of course important, but so are a man's career, his livelihood, his rights as a veteran, his status as a convicted criminal, and his reputation. To deny collateral attack to one not in confinement—the consequence of saying that habeas corpus is the only remedy—would be to deny the possibility of review by a constitutional court and ultimately by the Supreme Court, of the constitutional

claims of servicemen like plaintiff who have not been sentenced to jail or who have been released. Kauffman v. Secretary of The Air Force, 415 F.2d p. 995.

While recognizing these above decisions are apparently to the contrary, the Secretary contends that there should be no dispute about Article 76 of the UCMJ and that once the prescribed channels of direct review have been traversed, the proceedings, findings, and sentences of courts-martial, including all dismissals and discharges, are "final and conclusive," "and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies and officers of the United States."[2] It is argued that the statute on its face proscribes collateral review of courts-martial convictions and that the legislative history of Article 76 confirms the view that the statute means precisely what it states, except insofar as Congress recognized the traditional exception for a writ of habeas corpus.

In In re Yamashita, 327 U.S. 1, 8, 66 S.Ct. 340, 344, 90 L.Ed. 499 (1946), the Court noted "that the military tribunals which Congress has sanctioned by the Articles of War are not courts whose rulings and judgments are made subject to review by this Court. * * * Congress conferred on the courts no power to review their determinations save only as it has granted judicial power 'to the grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty'." The traditional lack of power in the civil courts to supervise or review the actions of military tribunals was again adverted to in Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), where the Court construed finality language in the predecessor statute to Article 76—similar to the language now in Article 76—to allow for habeas corpus review. There the Court reiterated that the military tribunals "have operated in a self-sufficient system, save only as habeas corpus was

---

2. The Uniform Code of Military Justice was enacted in 1950, approximately five years prior to Parrish's court-martial conviction.

available to test their jurisdiction in specific cases." 340 U.S. at 132, 71 S. Ct. at 152.

According to the Secretary, the finality provision of Article 76 is best understood in light of Article 67 of the UCMJ, which established a Court of Military Appeals to be composed solely of civilians. 10 U.S.C. § 867. The Court of Military Appeals, and not the civil courts, is responsible for supervision of the administration of military justice. Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969). The legislative history of the UCMJ reveals an extended discussion of the proper role of civilian judges in reviewing court-martial convictions. On the one hand, several proposals were made to render court-martial convictions directly reviewable by the federal courts on questions of law; only in this manner, it was urged, could fairness in court-martial proceedings be assured. On the other hand, there were objections to any civilian review of court-martial proceedings, on the ground that civilians could not properly assess the considerations of military discipline inherent in courts-martial. It would appear that the establishment of a Court of Military Appeals, to consist of civilian members only, and completely removed from all military influence or persuasion, represented a compromise between these viewpoints; on the one hand, final review would be entrusted to a civilian body dedicated to constitutional concepts of fair procedure, while at the same time this tribunal of last resort would be a specialized court that would gain familiarity with military problems.

Thus, in developing this structure, Congress deliberately and carefully determined the extent to which—apart from constitutionally guaranteed habeas corpus—civilian agencies have a role to play in military justice. Providing that civilians may serve on Boards of Review and that there shall be control by a civilian Secretary, the Code goes on to create a civilian Court of Military Appeals entrusted with the final judicial responsibility for the supervision of military justice. But the Court of Military Appeals was not established solely to provide uniform interpretation of military law; it was also entrusted with the responsibility to insure public confidence in the fairness of military justice.

■ Although the decisions cited by the plaintiff would allow jurisdiction, this court is reluctant to adopt the reasoning therein. To allow collateral review in the present situation, other than by habeas corpus, would to this court render Article 76 nugatory in all practical terms. This court is not impressed with the argument that the finality provision of Article 76 was modified by 10 U.S.C.A. § 1552. Although the plaintiff cites United States v. Augenblich, supra, as supporting his position, the court finds that the Supreme Court, while reviewing the case on certiorari declined to reach the jurisdictional question. The defendant included in his brief exhaustive references to the legislative history of the statutes involved, but there is no need to reflect upon them here as this court is of the opinion that the nature of the relief sought is dispositive of the case in this instance.

Pursuant to 28 U.S.C.A. § 1346(a) (2) [3] and 28 U.S.C.A. § 1491 [4] the plain-

3. 28 U.S.C.A. § 1346(a) (2) states:
   (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

   *     *     *     *     *

   (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases

not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

4. 28 U.S.C.A. § 1491 states:
   The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either

tiff's request for relief should be directed to the Court of Claims rather than this court. Plaintiff's theory revolves around his alleged illegal conviction and subsequent dismissal from the military. He is challenging the fact of his discharge rather than merely the character. It should be noted that the *Ashe* and *Smith* cases, supra, upon which the plaintiff so heavily relied, were cases in which only the character of discharge was challenged. Therefore, even assuming that 28 U.S.C.A. § 1361 gives this court jurisdiction to correct the type of discharge resulting from a court-martial conviction, it does not necessarily follow that additional relief such as back-payment of salary, allowances, medical benefits, and the like would be proper in this forum. Inherent in the plaintiff's theory for relief is the contention that had it not been for the wrongful dismissal from the military, he would have remained in the service from the last day of active duty until some fifteen years later or until he reached the age of sixty-two. Plaintiff insists that he is entitled to full pay, allowances, and benefits during this period. Therefore, a decision by this court concerning the validity of the dismissal necessarily involves an adjudication of the claim for back wages. It is apparent that the keystone of plaintiff's entire law suit is the claim for a money judgment against the United States. Considering the time period involved, there is no doubt that the claim far exceeds $10,000.[5] The court is further convinced that the crux of plaintiff's claim is monetary because plaintiff has admitted in the Complaint that his records were corrected to show that on October 26, 1956, he was administratively discharged pursuant to 10 U.S.C.A. § 874(b) with an honorable discharge certificate.

The Fifth Circuit in Carter v. Seamans, 411 F.2d 767 (1969), had precisely the same jurisdictional question as presented in this case.

If, as the defendant contends, jurisdiction of the case sub judice is available only under the aegis of Section 1346, Title 28, U.S.C., there can be no doubt that this court is without power to resolve the controversy. Prior to 1964, Subsection (d) (2) of Section 1346 barred the district courts from adjudicating any civil action brought by an officer of the United States to recover fees, salary or compensation. See, e. g., Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952). At that time the Court of Claims had exclusive jurisdiction of such cases regardless of the amount claimed. In 1964, however, Subsection (d) (2) was deleted by Congress and as a consequence Subsection(a) (2) is now applicable to cases involving claims by officers for back pay. The present status of the law is that the district courts have concurrent jurisdiction with the Court of Claims over such cases, PROVIDED that the amount of the claim does not exceed $10,000. Since both parties admit that the claim in the instant case does exceed $10,000, it would seem that the Court of Claims is the only forum having jurisdiction unless there is some jurisdictional fount other than Section 1346. Carter v. Seamans, p. 772.[6]

---

upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Adminis-

tion shall be considered an express or implied contract with the United States.

5. See Gordan v. Shoup, 115 U.S.App.D.C. 32, 316 F.2d 683 (1963) ; Powers v. United States, 218 F.2d 828 (7th Cir. 1954) ; Almour v. Pace, 90 U.S.App.D.C. 63, 193 F.2d 699 (1951).

6. 28 U.S.C.A. § 1491 clearly gives the Court of Claims jurisdiction in the case at bar.

Plaintiff's claim in the present case should be directed to the Court of Claims because it exceeds $10,000.

■ Notwithstanding what has been heretofore said concerning the doubtfulness of collateral attack, and assuming that it would be proper to issue an order pursuant to 28 U.S.C.A. § 1361, this court, like the court in *Carter*, concludes that mandamus is not the appropriate means for obtaining the relief prayed for.

The courts that have construed Section 1361 have uniformly held that its sole function was merely to extend to all district courts the mandamus jurisdiction formerly exercised only by the District Court for the District of Columbia. The same authorities also emphasize that the provision in question did not make any substantive change in the law of mandamus. The prevailing interpretation of Section 1361 was concisely summarized by Judge Connor in Dover Sand & Gravel, Inc. v. Jones, 227 F.Supp. 88 (D.N.H.1963), when he wrote:

Therefore, if the plaintiff could not have obtained relief before the enactment of § 1361, he is in no better position now. *Carter*, p. 773.

■ Mandamus is an extraordinary remedy which is available only in cases in which the usual forms of procedure are powerless to afford relief. Courts proceed with great caution in granting the writ as it is not a common means of obtaining redress, but is available only in rare cases as a last resort.[7] Generally speaking, before the writ of mandamus may issue the plaintiff must have a clear right to relief, the defendant must have a clear duty to act, and there must

be no other adequate relief available. Mandamus is not an alternative remedy, but is utilized only when there is a lack of other remedies.

Therefore, the court concludes that an alternative adequate remedy is available to the plaintiff pursuant to 28 U.S.C.A. § 1491. This section confers jurisdiction upon the Court of Claims and allows that Court to declare a serviceman's discharge illegal and to award him back pay.[8] It is the Court of Claims, not this court, which is familiar with this type of suit and has the expertise desired to properly adjudicate the issues presented.

This court shares the concern expressed by the Court in *Carter,* supra, that issuance of a mandamus would have the undesirable effect of undermining the jurisdiction of the Court of Claims. Plaintiff's claim is as heretofore stated undoubtingly a monetary claim and is in excess of $10,000. The 1964 amendment to 28 U.S.C.A. § 1346 vested the Court of Claims with exclusive jurisdiction of such actions. Since the plaintiff has been successful in his request for a change in the type of discharge he received, the only relief this court could give without undermining the jurisdiction of the Court of Claims, would be to grant his request to declare his conviction illegal. Although plaintiff's relief is preconditioned upon an alleged illegal conviction, it is only incidental to his monetary claim, which this court has no right to adjudicate.

The plaintiff's motion for summary judgment is denied and defendant's motion to dismiss is granted without prejudice to plaintiff to proceed in the Court of Claims.

And it is so ordered.

---

7. 52 Am.Jur.2d Mandamus § 5.

8. The Court of Claims in a number of instances has declared a discharge illegal and awarded back pay. See, e. g., Conn v. United States, 376 F.2d 878, 180 Ct.Cl. 120 (1967); Shaw v. United States, 357

F.2d 949, 174 Ct.Cl. 899 (1966); Clackum v. United States, 296 F.2d 226, 148 Ct.Cl. 404 (1960); Egan v. United States, 158 F.Supp. 377, 141 Ct.Cl. 1 (1958); Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650 (1947).